### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD WHITE, on behalf | : | |
| of himself and all others | : | |
| similarly situated, | : | |
| **Plaintiff,** | : | |
| v. | : | **Civ. No. 15-4595** |
| | : | |
| SUNOCO INC., | : | |
| **Defendant.** | : | |
| | : | |

---

**Diamond, J.**                                             **May 24, 2016**

### MEMORANDUM

This putative class action concerns the availability of a five-cent per gallon discount on fuel purchases made with a Sunoco Rewards Credit Card. Plaintiff Donald White proceeds against Defendant Sunoco, alleging fraud, negligent misrepresentation, unjust enrichment, and violations of Florida's Deceptive and Unfair Trade Practices Act. (Doc. No. 1, Compl.) Sunoco has filed a Motion to Compel Arbitration and Stay Litigation, relying on the underlying Cardholder Agreement that purportedly requires Plaintiff to arbitrate any claims relating to his Sunoco Rewards Credit Card account. (Doc. No. 19); 9 U.S.C. § 3. I conclude that the Agreement (and its arbitration clause) governs only Plaintiff's relationship with Citibank, the card issuer. Accordingly, I will deny Defendant's Motion.

### I.     Procedural Background

In response to Plaintiff's class action Complaint (Doc. No. 1), Defendant filed the instant Motion. (Doc. Nos. 11, 19.) After the matter was fully briefed, I denied the Motion without prejudice and ordered the Parties to take discovery with respect to the Cardholder Agreement's enforceability. (Doc. Nos. 14, 15, 17, 18.) Upon completion of that limited discovery, Sunoco

renewed the instant Motion.  (Doc. No. 19.)  The matter has again been fully briefed.  (Doc. Nos. 20, 23, 24, 25.)

II.    **Factual Background**

I have considered the facts in the light most favorable to Plaintiff and made all reasonable inferences in his favor.  Fed. R. Civ. P. 56; Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 776 (3d Cir. 2013) ("After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.").

a.  The Sunoco Rewards Program

Sunoco is a Pennsylvania corporation marketing and selling gasoline through approximately 4,900 retail outlets in twenty-six states.  (Doc. No. 1, Compl. ¶¶ 5-6.)  Plaintiff attaches to his Complaint examples of the advertising pamphlets and application materials that Sunoco published and distributed to encourage enrollment in its Rewards Program.  (Id., Exs. A, B, C; see also Doc. No. 20, Ex. 9.)  According to these materials, the Program offers customers who buy gas with the Sunoco Rewards Credit Card either a five-cent per gallon price reduction at the pump or a corresponding credit on their monthly card billing statements.  (Id. ¶¶ 8-13 & Exs. A, B, C.)  Although not stated in the promotional materials, discovery has revealed that some Sunoco stations will not provide the discount "because they are independently owned and operated."  (Doc. No. 20, Ex. 1 at 7.)

b.  The Rewards Card

Citibank is the issuer of the Rewards Card.  (Doc. No. 1, Exs. A, C ("Citibank, N.A. . . . is the issuer of your Sunoco® Rewards Card Account.").)  Application materials for the Rewards Card state that Citibank will share information with Sunoco respecting the applicant's account.

(Id. ("You authorize us to share with Sunoco® and its affiliates experiential and transactional information regarding your activity with us.").  Sunoco alone is responsible for ensuring the discount is properly applied.  (Id. ¶ 20 ("[C]ustomer service confirmed that Sunoco is responsible for ensuring that the 5¢/gallon discount is properly applied.").)  Moreover, a cardholder must pay any card balance to "Sunoco, Inc." by mail or online at "sunoco.accountonline.com." (Doc. No. 23, Ex. C, Plaintiff's Account Statements.)  Any billing or customer service inquiries, however, should be directed to "Sunoco, Inc." at what appears to be Citibank's South Dakota address.  (Id.)

Sunoco admits that it is not a corporate affiliate of Citibank and does not have an "ownership interest" in Citibank.  (Doc. No. 20, Ex. 5, Interrogs. 7-9.)    Although Sunoco contends that it jointly marketed the Rewards Card with Citibank, this is a disputed fact, which I am compelled to disregard in deciding Sunoco's Motion.  (See Doc. No. 19 at 14 & Ex. A ¶¶ 5-8; Ex. B, Interrog. 2.); Doc. No. 20 at 16 ("[A] factual dispute exists as to whether Sunoco and Citibank do, in fact, 'jointly market' the Citibank Card or control the 5¢/gallon discount.").)

c.  Enrollment in the Sunoco Rewards Program

A Florida resident, Plaintiff applied for and obtained a Sunoco Rewards Card in January 2013.  (Doc. No. 1 ¶¶ 4, 15.)  As alleged, the Rewards Card promotional and application materials "induce[d] Plaintiff and Class members to become (or to remain) Rewards Card cardholders"; but for these representations, Plaintiff and the Class members would not have applied for Rewards Cards.  (Id. ¶¶ 41-43.)  After his application was approved, Plaintiff was issued a Rewards Card, which he used to purchase fuel at Sunoco stations.  (Id. ¶ 15.)

Consistent with its regular business practice, when it issued the Rewards Card, Citibank provided Plaintiff with the Card's Terms and Conditions, including a Cardholder Agreement, a

Fact Sheet, and Supplemental Pricing Information.  (Id., Exs. A, C ("When you become a cardmember, you will receive the full Sunoco Rewards Card Program Terms and Conditions."); Doc. No. 11, Ex. A ¶¶ 6-7 & Ex. 1 ("Attached as Exhibit 1 is an exemplar Card Agreement, Fact Sheet, and Supplemental Pricing Information . . . . It is the Bank's practice to include a note in a customer's account records when mail is returned by the post office as undeliverable."); Doc. No. 19, Ex. D.)  None of these documents includes any mention of the Reward Program's terms and conditions, however. Rather, the Program's details are included only in Sunoco's promotional and application materials.  (Doc. No. 1, Exs. A, B, C.)

On April 30, 2015, Plaintiff emailed Citibank, requesting another copy of his account terms.  (Doc. No. 19, Ex. C.)  In this same email, he acknowledged receiving the Agreement when opening his account. (Id. ("I seem to have misplaced my sunoco credit card agreement. How do I get another copy?").)   On June 1, 2015, Plaintiff also called Citibank and requested another copy of the Cardholder Terms and Conditions, which Citibank sent him.  (Doc. No. 11, Ex. A, Decl. ¶ 9.)  The record indicates that Citibank provided Plaintiff with only an additional copy of the Cardholder Agreement and Fact Sheet—not a copy of any terms relating to the Rewards Card Program.  (Id.)  Although not acknowledged by Sunoco, Citibank recently sent Plaintiff a new Cardholder Agreement.  (Doc. No. 20 at 8 n.1 & Ex. 11.)

Plaintiff used his Rewards Card for more than two and a half years.  (Doc. No. 23, Ex. C, Apr. 20, 2015 Account Statement.)  The Cardholder Agreement sets out the process a cardholder must follow if he disputes his account statement.  (Doc. 19, Ex. D at 7 ("If you think there is an error on your statement, write to us at the address for billing inquiries and correspondence shown on the front of your statement.").)  Before bringing this action, Plaintiff repeatedly invoked this process, communicating directly with Citibank's Rewards Card Customer Service respecting the

status of fuel discounts he alleges were improperly withheld.  For instance, in an August 2015

email chain with Customer Service, Plaintiff sought a credit because the "discount was not

provided at the pump, and the discount is not on my [Rewards Card] statement."  (Doc. No. 23,

Ex. B.)  From January 2015 to August 2015, Plaintiff received credits on his account statements

at least five times for amounts ranging from $0.82 to $5.00, purportedly representing improperly

withheld fuel discounts.  (Doc. No. 20, Exs. 1, 2, 6; Doc. No. 23, Exs. A, B, C (Account

Statements reflecting credits).)

      d.  <u>Arbitration Provision</u>

      The gravamen of the instant Motion is whether the Cardholder Agreement's Arbitration

Provision—which Citibank registered with the American Arbitration Association as "Citibank

Cards Standard Arbitration Agreement"—requires Plaintiff to arbitrate his dispute with Sunoco.

(Doc. No. 20 at Ex. 12.)  Several of the Agreement's provisions are thus implicated.

      Under the prominent heading "**ARBITRATION,**" the Agreement states:

> ***PLEASE READ THIS PROVISION OF THE AGREEMENT
> CAREFULLY*.  IT PROVIDES THAT ANY DISPUTE MAY BE
> RESOLVED BY BINDING ARBITRATION.  ARBITRATION
> REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE
> RIGHT TO A JURY AND THE RIGHT TO INITIATE OR
> PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING . . . .**

> ***Agreement to Arbitrate:*** Either you or we may,  without  the other's consent,
> elect mandatorily, binding arbitration for any claim, dispute, or controversy
> between  you  and  us  (called "Claims").

(Doc. 19, Ex. D at 6 (emphases and typography in original).)  The Agreement defines "we, us,

and our" as referring to Citibank, N.A. and "you" as the cardholder.  (<u>Id.</u>, Ex. D at 2.)  The

Agreement provides: "At any time you or we may ask an appropriate court to compel arbitration

of Claims, or to stay the litigation of Claims pending arbitration, even if such Claims are part of a

lawsuit." (<u>Id.</u>, Ex. D at 6.)

The Agreement extends to "[a]ll Claims relating to [a cardmember's] account," including "[c]laims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision" and "[c]laims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law . . . ." (Id.) It covers "[n]ot only [Citibank's and the cardholder's Claims], but also Claims made by or against anyone connected with [Citibank or the cardholder] or claiming through [Citibank or the cardholder], such as . . . an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy." (Id.) There is no reference to Sunoco anywhere in the Cardholder Agreement.

The Arbitration Provision is to be construed "in the broadest way the law will allow it to be enforced." (Id.) Moreover, any claims subject to arbitration "must proceed on an individual (non-class, non-representative) basis." (Id.) Finally, the Cardholder Agreement identifies South Dakota law as governing its interpretation. (Id., Ex. D at 7.)

e.   The Instant Dispute

Plaintiff proceeds on behalf of himself and a putative class. Significantly, Plaintiff does not allege breach of contract because of Sunoco's failure to honor the Rewards Program's terms and conditions, nor does he name Citibank, the card's issuer. Rather, Plaintiff proceeds against Sunoco alone, alleging fraud, negligent misrepresentation, unjust enrichment, and violations of Florida's Deceptive and Unfair Trade Practices Act claims based on Sunoco's affirmative misrepresentations (or omissions) in its promotional and application materials. (Doc. No. 1 ¶¶ 38-76.) Plaintiff explicitly alleges that Sunoco knew that these representations were "false and misleading" when it made them, that the representations were intended to "induce customers to sign-up for the Sunoco Rewards Credit Card so they frequent Sunoco locations," and that the

representations did "induce Plaintiff and Class Members to become or to remain Sunoco Rewards Credit Card cardholders" to their detriment.  (Id. ¶¶ 14, 40, 42.)  Plaintiff seeks, *inter alia*, actual and punitive damages and injunctive and declaratory relief on behalf of himself and the putative Class.  (Id., Prayer for Relief.)

### III.   Legal Standards

"Arbitration is strictly a matter of contract. If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so."  E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S., 269 F.3d 187, 194 (3d Cir. 2001) (citations omitted).  In deciding whether to compel arbitration, I must conduct a "two-step inquiry into (1) whether a valid agreement to arbitrate exists, and (2) whether the particular dispute falls within the scope of the agreement."  Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005).

In determining whether to permit a non-signatory third party to compel arbitration against a signatory, I must consider whether traditional principles of contract, agency, or estoppel require arbitration.  See DuPont, 269 F.3d at 195; Invista S.A.R.L. v. Rhodia, S.A., 625 F.3d 75, 85 (3d Cir. 2010); Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1295 (3d Cir. 1996). The usual presumption in favor of arbitration does not extend to non-signatories to an agreement.  Griswold v. Coventry First LLC, 762 F.3d 264, 271 (3d Cir. 2014) ("The presumption in favor of arbitration does not extend, however, to non-signatories to an agreement; it applies only when both parties have consented to and are bound by the arbitration clause.").  Rather, in such circumstances, the Third Circuit has held that "[t]he party opposing arbitration is given the benefit of all reasonable doubts and inferences that may arise."  Id. at 270 (citations and quotations omitted).

Because the Parties have taken discovery respecting the enforceability of the underlying Cardholder Agreement, I will review Sunoco's renewed Motion to Compel Arbitration under a summary judgment standard.  Guidotti, 716 F.3d at 776; Fed. R. Civ. P. 56.

## IV.    Applicable Law

I must grant Sunoco's Motion if "traditional principles of state law allow a contract to be enforced by or against nonparties to the contract."  Griswold, 762 F.3d at 271 (citing Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 631 (2009)).  I thus must determine which state law's applies.  See Booth v. BMO Harris Bank, N.A., 2014 WL 3952945, at *4 n.4 (E.D. Pa. Aug. 11, 2014) (Parties must raise choice-of-law issue in arbitration enforceability context).  Sunoco offers no choice-of-law analysis.  See Flintkote Co. v. Aviva PLC, 769 F.3d 215, 220 (3d Cir. 2014) (applying the forum state's law when "neither party presented a timely argument that [the] motion is governed by the law of any jurisdiction other than the forum state").  This is unsurprising given that, as Plaintiff acknowledges, a "choice-of-law analysis is [not] necessary for purposes of Sunoco's renewed Motion."  (Doc. No. 20 at 12 n.7.)  As Plaintiff notes, the forum law (Pennsylvania), the law governing the Cardholder Agreement (South Dakota), the law of Plaintiff's residence (Florida), and Third Circuit authority all set out the same framework for determining whether non-signatory Sunoco may enforce the arbitration requirement against Plaintiff.   (See Doc. No. 20 at 14 n.14 (citing relevant state law decisions applying contract, agency, and estoppel principles to determine enforceability); see also DuPont, 269 F.3d at 195; Invista S.A.R.L., 625 F.3d at 85; Lawyers Funding Grp., LLC v. Harris, 2016 WL 233669, at *5 n.6 (E.D. Pa. Jan. 20, 2016) (applying federal law and applicable state law when "there is no reason to believe the result would be any different").

8

Because I agree with Plaintiff that my decision here would be the same regardless of whose law I apply, I need not decide the choice-of-law question.  See Griswold, 762 F.3d at 272 n.6 (after Arthur Anderson, courts deciding motions to compel arbitration may still look to federal decisions applying the substantive law of the applicable state court); see also Berg Chilling Sys., v. Hall Corp., 435 F.3d 455, 462 (3d Cir. 2006) ("[W]here the laws of the two jurisdictions would produce the same result on the particular issue presented, there is a 'false conflict,' and the Court should avoid the choice-of-law question." (citations omitted)). Accordingly, I will look principally to Third Circuit authority in ruling on Sunoco's Motion.

**V.**     **Discussion**

Sunoco bases its Motion on the Cardholder Agreement between Plaintiff and Citibank, requiring arbitration of all disputes arising under or related to the Agreement.  (Doc. No. 19, Ex. D.)   Plaintiff responds that because he does not allege breach of the Agreement, but rather "straightforward false advertising," the Agreement's provisions cannot control.  (Doc. No. 20 at 8, 13.)  He also argues that because the Agreement applies only to his relationship with Citibank, Sunoco—which is not even mentioned in the Agreement—may not seek enforcement of the Arbitration Provision.   (Id. at 11.)  I agree with Plaintiff.

*a.   Validity of the Arbitration Provision*

It is undisputed that there is a valid Arbitration Provision between Plaintiff and Citibank. (Doc. No. 20 at 8 n.1 ("For purposes of Sunoco's renewed motion, Plaintiff White does not dispute the existence of the Cardholder Agreement between himself and Citibank.").)  Plaintiff received several copies of the Agreement, which included the arbitration requirement.  (Doc. No. 11, Ex. A, Decl. ¶ 9; Doc. No. 19, Ex. C.)  By performing under the Agreement—i.e., by using his credit card and maintaining an open credit line for more than two and a half years—Plaintiff

accepted the Agreement's terms as to Citibank.  See Elinich v. Discover Bank, 2013 WL 342682, at *1-2 (E.D. Pa. Jan. 29, 2013) (agreement's validity confirmed where card agreement provided that card use constituted acceptance of the agreement's terms, and the plaintiff did not dispute that she used the card); Martin v. Discover Bank, 2012 WL 6197992, at *3 (E.D. Pa. Dec. 3, 2012) ("Plaintiffs' continued use of their Discover Cards constituted acceptance of the arbitration agreements."); see also Stinger v. Chase Bank, USA, NA, 265 F. App'x 224, 227 (5th Cir. 2008) (same); Lowman v. Citibank (S.D.), N.A., 2006 WL 6108680, at *3 (C.D. Cal. Mar. 24, 2006) (same respecting cardholder agreement containing South Dakota choice-of-law provision).

   *b. Enforceability*

   Sunoco must also show that as a non-signatory, it may compel enforcement of the Agreement.  It has not done so.

   Arbitration clauses generally "can be enforced only by the signatories to those agreements."  Dayhoff Inc., 86 F.3d at 1296; see also Griswold, 762 F.3d at 271 ("The presumption in favor of arbitration does not extend, however, to non-signatories to an agreement."); Devon Robotics v. Deviedma, 2009 WL 4362822, at *4 (E.D. Pa. Nov. 30, 2009) (same); Miron v. BDO Seidman, LLP, 342 F. Supp. 2d 324, 332 (E.D. Pa. 2004) ("Because arbitration is a matter of contract, exceptional circumstances must apply before a court will impose a contractual agreement to arbitrate on a non-contracting party.").  Relying on state law contract, agency, and estoppel principles, the Third Circuit has crafted several exceptions to this general rule:

> [C]ommon law theories used to bind a non-signatory to an arbitration clause include third party beneficiary, agency and equitable estoppel.

Bouriez v. Carnegie Mellon Univ., 359 F.3d 292, 294 (3d. Cir 2004); see also DuPont, 269 F.3d at 195 ("When asked to enforce an arbitration agreement against a nonsignatory, we ask whether

he or she is bound by that agreement under traditional principles of contract and agency law." (citing Bel-Ray Co. v. Chemrite (Pty) Ltd., 181 F.3d 435, 444 (3d Cir. 1999))); see also Invista S.A.R.L., 625 F.3d at 85.  None of these exceptions applies here.

Contract

Under traditional principles, non-signatories may compel arbitration when they are third party beneficiaries of the underlying contract.  See DuPont, 269 F.3d at 195 ("[C]ourts have allowed non-signatory third party beneficiaries to compel arbitration against signatories of arbitration agreements." (citing John Hancock Life Ins. Co. v. Wilson, 254 F.3d 48, 59-61 (2d Cir. 2001))). A party claiming to be a third party beneficiary must show "that the contract was entered into by the parties directly and primarily for his benefit."  See, e.g., Masad v. Weber, 772 N.W.2d 144, 154 (S.D. 2009); see also Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162, 168 (3d Cir. 2008) ("[U]nder Pennsylvania law, both contracting parties must have expressed an intention that the third-party be a beneficiary, and that intention must have affirmatively appeared in the contract itself.").   A mere showing of an incidental benefit is insufficient.  Masad, 772 N.W.2d at 154.

Here, it is apparent that the Cardholder Agreement was "entered into by the parties directly and primarily for the benefit of" Citibank.  Masad, 772 N.W.2d at 154.  As I have discussed, the Agreement does not even mention Sunoco or the Rewards Card Program. See, e.g., Ross v. Am. Exp. Co., 547 F.3d 137, 146 (2d Cir. 2008) (refusing to enforce arbitration provision when the moving party has no "corporate affiliation with the Issuing Banks . . . did not sign the cardholder agreements, [] is not mentioned therein, and [] had no role in their formation or performance").   Rather, the record confirms that, like virtually all credit card contracts, this Agreement sets out the terms and conditions by which the credit provider (i.e., Citibank) makes

11

credit available to the cardholder. (Doc. 19, Ex. D at 2 ("This Card Agreement . . . governs the use of your card and account. . . . You must pay us for all amounts due on your account.").)  The Agreement was thus intended primarily to benefit Citibank.  To the extent it benefited Sunoco, the benefit was no greater than that conferred on all vendors who accepted the Citibank card. Sunoco was thus not a third party beneficiary of the Agreement.  Cf. DuPont, 269 F.3d at 197-98; Kolber Properties, LLC v. Evan, 2013 WL 3097174, at *4 (D.N.J. June 18, 2013) (declining to find third party beneficiary status where any benefit received by the third party was not a direct result of the underlying agreement but rather incidental to it).

The Arbitration Provision itself confirms this conclusion.  Once again, the Provision explicitly limits its application to "you" and "us"—i.e., Citibank and the cardholder.  To the extent the Provision applies to "Claims made by or against anyone connected with [Citibank]," that language does not transform Sunoco and all other vendors into third party beneficiaries.  Cf. Chastain v. Union Sec. Life Ins. Co., 502 F. Supp. 2d 1072, 1082 (C.D. Cal. 2007) (rejecting argument that similar contractual provision—i.e., "Claims made by or against anyone connected with us or you or claiming through us or you, such as . . . agent, representative, affiliated company"—permits a non-signatory to enforce arbitration provision).

Courts have also permitted a non-signatory to enforce a contract when the non-signatory has incorporated the contract by reference, assumed it, or is an alter-ego of a signatory.  See Invista S.A.R.L., 625 F.3d at 85; Trippe Mfg. Co., 401 F.3d at 532; see also Aluminium Bahrain B.S.C. v. Dahdaleh, 17 F. Supp. 3d 461, 470 (W.D. Pa. 2014) ("Alter ego is a recognized contract theory for binding a non-signatory to an arbitration agreement.").  Sunoco has not even suggested, much less shown, that any of these theories is relevant here. Accordingly, it cannot seek enforcement of the Cardholder Agreement's Arbitration Provision.

Agency

"To bind a principal by its agent's acts, the plaintiff must demonstrate that the agent was acting on behalf of the principal and that the cause of action arises out of that relationship." DuPont, 269 F.3d at 198.  Sunoco has not shown that Citibank is Sunoco's agent or vice versa. As I have discussed, Sunoco alone is responsible for ensuring the fuel discount is properly applied.  (Doc. No. 1 ¶ 20; Doc. No. 23, Ex. C, Plaintiff's Account Statements.)  Sunoco has admitted that neither company is a "corporate affiliate" of the other.  (Doc. No. 20 at Ex. 5, Interrogs. 7-9.)  Nor does it appear that Sunoco is a "predecessor, successor, heir, assignee, or trustee in bankruptcy" of Citibank.  (Doc. 19, Ex. D at 6.)  Finally, Plaintiff has not alleged that Sunoco engaged in concerted action with Citibank or even that Citibank committed any wrongdoing.  See, e.g., Schreiber v. Ally Fin., Inc., 2015 U.S. App. LEXIS 21902, *5 (11th Cir. 2015) (refusing to compel arbitration where, *inter alia*, plaintiff alleged no concerted misconduct between signatory and non-signatory).  Sunoco has thus not shown that agency principles support its Motion.

Courts have also applied agency principles to permit a non-signatory to enforce a contract where there is either a parent/subsidiary, ownership, or some other significant relationship between the signatory and the non-signatory defendant.  See DuPont, 269 F.3d at 199; see also Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA, 779 F.3d 214, 219 (3d Cir. 2015) ("In determining whether a non-signatory is closely related to a contract, courts consider the non-signatory's ownership of the signatory, its involvement in the negotiations, the relationship between the two parties and whether the non-signatory received a direct benefit from the agreement."); Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1122 (3d Cir. 1993) ("corporate sister" of a signatory could enforce arbitration provision); Booth, 2014 WL

13

3952945, at *7 (non-signatory defendant could enforce arbitration provision where plaintiff alleged concerted misconduct by both signatory and non-signatory defendant).  Once again, nothing in the record suggests that Sunoco and Citibank have such a "significant" relationship. Accordingly, it cannot seek enforcement of the Cardholder Agreement's Arbitration Provision.

Estoppel

Finally, estoppel does not require Plaintiff to arbitrate his dispute with Sunoco.   Under the "alternative estoppel" theory, a non-signatory may seek enforcement when it can show: 1) there is a close relationship between it and a signatory; and 2) the alleged wrongs are related to a non-signatory's contractual obligations and duties.  See DuPont, 269 F.3d at 199 (citing Thomson–CSF, S.A. v. American Arbitration Assoc., 64 F.3d 773, 778 (2d Cir. 1995)).  To satisfy the second prong, the moving party must show that the claims are "intimately founded in and intertwined with the underlying contract obligations."   See id.; Miron, 342 F. Supp. 2d at 333 ("The more appropriate theory of estoppel in this case is 'alternative estoppel,' which will bind a signatory to arbitrate at a non-signatory's insistence.").  Courts will also invoke estoppel to "prevent a [non-signatory"] . . . from relying on [a] contract when it works to his advantage by establishing the claim, and repudiating it when it works to his disadvantage by requiring arbitration." Aluminium Bahrain B.S.C., 17 F. Supp. 3d at 470; cf. DuPont, 269 F.3d at 199 (describing how, in the inverse, "courts have held non-signatories to an arbitration clause where the non-signatory knowingly exploits the agreement").  Neither theory applies here.

Even assuming, *arguendo*, Sunoco could make out a close relationship with Citibank, Sunoco has not shown that the instant dispute is intertwined with the underlying Agreement.  As I have discussed, Plaintiff has alleged only Sunoco's tort-based fraud, not breach of contract (as might be expected if he were relying on the Agreement).  As alleged, Plaintiff and other Class

members were fraudulently induced to obtain and use the Rewards Card through Sunoco's false advertising.  Plaintiff's causes of action are thus independent from—indeed, largely antecedent to—the Agreement.  See Griswold, 762 F.3d at 274 (because Plaintiff stated "a fraud antecedent to the purchase agreement," his claim was not inextricably intertwined with the underlying Agreement and was thus not subject to its arbitration provision); Devon, 2009 WL 4362822, at *5 ("The plaintiff's actual dependence on the underlying contract in making out the claim against the nonsignatory defendant is therefore always the *sine qua non* of an appropriate situation for applying equitable estoppel." (internal quotations and further citations omitted)).  Because Plaintiff's claims are separate from the Cardholder Agreement (and its arbitration clause), his claims are thus not so "intertwined with" the Cardholder Agreement as to require him to submit to arbitration.

Sunoco also argues that Plaintiff should be held to the contract from which he has benefitted.  (Doc. No. 19 at 16; Doc. No. 23 at 13; Doc. No. 25 at 2.)  I do not agree. The existence of a separate agreement with the non-signatory "saves the day" for Plaintiff.  DuPont, 269 F.3d at 201; Griswold, 762 F.3d at 273-74 ("[W]hat 'saves the day' for [Plaintiff] is the fact that the alleged [agreement at issue] took place prior to and apart from the execution of the purchase agreement. Of course, that alleged fraud was related to the purchase agreement . . . . But that alone is not sufficient to compel arbitration under the equitable estoppel doctrine: the claims must be based *directly* on the agreement.").

Here, as in DuPont, there appears to be a separate agreement between the non-signatory and Plaintiff: one created by the promotional and application materials and not even mentioned in the Cardholder Agreement.  (Doc. No. 1, Exs. A, B, C.)  As in Dupont, this "saves the day" for Plaintiff.  269 F.3d at 201.  As the Third Circuit explained in Bouriez:

> A dispute that arises under one agreement may be litigated notwithstanding a mandatory arbitration clause in a second agreement, even where the two agreements are closely intertwined.

359 F.3d at 295 (quoting Indus. Elecs. Corp. of Wis. v. iPower Distribution Grp., 215 F.3d 677 (7th Cir. 2000)). Plaintiff's conduct—including using his credit card, communicating with Citibank customer service, or receiving credit discounts on his account statements—thus does not estop Plaintiff from repudiating the Agreement's arbitration requirement with respect to Sunoco. See, e.g., Leighton v. Chesapeake Appalachia, LLC, 2013 WL 6191739, at *9 (M.D. Pa. Nov. 26, 2013) ("Since Plaintiffs are not relying on the provisions of the Lease to make their claims against the nonsignatory defendants, fairness does not dictate that they be estopped from litigating their claims against them in court and requiring them to go to arbitration instead."); Masters v. Lowe's Home Ctrs., Inc., 2009 WL 1657925, *4 (S.D. Ill. June 11, 2009) ("Although [the plaintiff] was arguably exercising one of her rights under the Agreement in making her credit card payment at a Lowes store, her claim against Lowes does not refer to nor depend on her contractual right [under a standard Cardholder Agreement]. . . . Surely, the doctrine of equitable estoppel does not mean the merchant can shelter under the arbitration provisions of those agreements.").

In sum, estoppel does not require Plaintiff and the putative Class to submit their dispute with Sunoco to arbitration.

**VI.**   **Conclusion**

Giving Plaintiff "the benefit of all reasonable doubts and inferences," it is apparent that he is not required to arbitrate his dispute with Sunoco.   <u>Griswold</u>, 762 F.3d at 270.   The Cardholder Agreement appears to be the very same standard agreement that Citibank employs for all credit cards it issues.   (Doc. No. 20, Ex. 12.)   Plaintiff's claims against Sunoco are governed by an entirely separate agreement between him and Sunoco—an agreement that makes no mention of arbitration.   (Doc. No. 1, Exs. A, B, C.)   Moreover, the "claims arise from the misrepresentations made to [Plaintiff]" by Sunoco.   <u>DuPont</u>, 269 F.3d at 197.   Indeed, Plaintiff's claims "would exist even if the contract containing the arbitration clause were void."   <u>Griswold</u>, 762 F.3d at 274 (quoting <u>Indus. Elecs. Corp.</u>, 215 F.3d at 274). In these circumstances, I will deny Defendant's Motion.   (Doc. No. 19.)

An appropriate Order follows.

/s/ Paul S. Diamond
_____
Paul S. Diamond, J.

17