IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONALD WHITE, on Behalf of Himself and All Others Similarly Situated,<br><br>        Plaintiff,<br><br> vs.<br><br>SUNOCO INC.,<br><br>        Defendant. | CIVIL ACTION NO: 2:15-cv-04595-PD |

**PLAINTIFF'S MOTION TO ENFORCE SUBPOENA TO CITIBANK**

Plaintiff Donald White, by and through undersigned counsel, respectfully moves this Court for an order compelling non-party Citibank, N.A. ("Citibank") to produce documents responsive to Plaintiff's subpoena *duces tecum*.

### I. INTRODUCTION

This case is about whether consumers who purchase fuel at a Sunoco station with a Sunoco Card receive the 5¢/gallon discount promised by Sunoco. Sunoco claims it can apply the discount in two ways: (i) as a rollback of the pump price at the time of purchase, or (ii) as a statement credit after the fact. To facilitate the latter, Sunoco hired Citibank to manage Sunoco Card cardholders' accounts, including the application of discounts as statement credits.

Plaintiff issued a subpoena *duces tecum* to Citibank in December 2017 to obtain documents and data sufficient to show what information Citibank receives from Sunoco vis-à-vis discounts to be applied as statement credits, and whether and how those discounts are in fact applied as statement credits. Plaintiff agreed to defer Citibank's responding to the subpoena until Sunoco produced its own data, so any "gaps" could be addressed by Citibank. Sunoco made its initial data production in early February 2018. Plaintiff thereafter agreed with Citibank to limit his subpoena without prejudice to three very discrete categories of data: (i) data showing the number and identities of cardholders; (ii) data Citibank receives from Sunoco about which cardholders'

accounts should receive discounts as statement credit; and (iii) data reflecting whether and how Citibank in fact applies the discounts as statement credit.

But then, Citibank went silent. Plaintiff's multiple follow-up emails and telephone calls went unanswered. Finally, after Plaintiff threatened to go before this Court, Citibank finally responded in late April. Citibank promised to provide information by May 2, but that date came and went without any word from Citibank.

Plaintiff cannot meet and confer with Citibank indefinitely. Plaintiff has made clear that it reasonably seeks three very discrete categories of data from Citibank that contain information highly relevant to Plaintiff's claims and class certification issues. Sunoco itself claims it does not possess this data. Thus, Plaintiff has no choice but to obtain it from Citibank.

For these reasons, discussed more fully below, Citibank should be ordered to produce the requested data in response to Plaintiff's subpoena.

## II.     BACKGROUND

On December 14, 2017, the Court ordered the parties to serve their initial discovery by December 21, 2017. *See* ECF 40. The following week, Plaintiff timely issued a subpoena *duces tecum* to Citibank on December 20, 2017. *See* Ex. A. The subpoena narrowly targeted the most pertinent data Citibank likely possessed about Sunoco cardholders. *See id.* Namely, the subpoena sought data "sufficient to show" Sunoco cardholders, the dates and amounts of their purchases of fuel at Sunoco stations with the Sunoco Card, and any discounts or credits applied to the cardholders' accounts. *See id.*

Citibank served written objections to the subpoena on January 26, 2018. *See* Ex. B. Thereafter, Plaintiff and Citibank communicated multiple times about the information Plaintiff sought through the subpoena. Plaintiff agreed to work with Citibank to narrow the breadth of the subpoena as much as possible, including to fill-in any "gaps" in the data Sunoco itself produced. Citibank also expressed some conceptual concerns about cardholder privacy; Plaintiff responded

that the existing Protective Order should assuage these concerns, or it could be modified if necessary.

Sunoco made its initial data production on February 5, 2018. Plaintiff's counsel invited Citibank's counsel to the ensuing February 8, 2018 status conference to elaborate on its confidentiality concerns. However, the conference was re-scheduled at the parties' request for February 12, and Citibank's counsel could not attend on that date.

Plaintiff communicated with Citibank the day after the conference, on February 13. Plaintiff underscored that the most pressing data responsive to the subpoena included data showing the identities of cardholders, and data showing whether and how discounts were applied to cardholders' accounts as statement credit. Citibank said it would look into it.

Plaintiff then did not hear back from Citibank for several weeks. Citibank did not respond to Plaintiff's follow-up emails of March 14, April 2, and April 5. *See* Ex. C. Intervening telephone calls also went unreturned. On April 18, Plaintiff asked Citibank yet again to revert on its subpoena compliance efforts, or else Plaintiff might need to seek the Court's intervention. *See id*. Citibank remained silent. On April 20, Plaintiff gave Citibank a final chance to respond by April 24. *See id.*

The parties finally spoke on April 23, 2018. *See* Ex. D. Plaintiff again reiterated that it could table without prejudice all of the other subpoena topics if Citibank produced data sufficient to show: (i) the number and identities of Sunoco Card cardholders, (ii) the data Citibank receives from Sunoco about which cardholders' accounts should receive discounts as statement credit; and (iii) data reflecting whether and how Citibank applied the discounts as statement credit. *See id.* Plaintiff deliberately tailored this proposal to minimize the burden to Citibank, so that Citibank would not need to produce initially, for example, any emails or other loose electronic documents. Plaintiff asked Citibank to confirm by April 30 that it will produce this data, and to produce it by May 9. *Id.*

Citibank responded on April 29, claiming that it would respond "by the middle of next week." *See* Ex. E.  That date (May 2) came and went.  Plaintiff, left with little other choice, now moves this Court to enforce the subpoena to Citibank.

### III.  ARGUMENT

The permissible scope of discovery under Federal Rule 45 is the same as under Rule 26(b)(1), which provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]"  Federal Rule of Civil Procedure 45(d)(2)(B) provides that, after a subpoenaed party issues objections, the subpoenaing party "may, upon notice to the person commanded to produce, move at any time for an order to compel the production." The burden lies on "the resisting non-party to explain why discovery should not be permitted." *Custin v. Wirths*, No. 12-910, 2017 WL 517789, at *2 (D.N.J. Feb. 8, 2017); *First Sealord Sur. v. Durkin & Devries Ins. Agency*, 918 F. Supp. 2d 362, 382-83 (E.D. Pa. 2013).  Even if the resisting party can demonstrate a "clearly defined and serious injury," that does not end the inquiry.  *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 239 (E.D. Pa. 2014). Rather, the court then must weigh (1) the relevance, (2) need, (3) and confidentiality of the requested materials, as well as (4) the harm that compliance would cause the subpoenaed nonparty.  *Id.*

Plaintiff clearly makes a threshold showing that the data he seeks from Citibank is highly relevant to his claims.  Data showing whether and how Citibank applies discounts as statement credit at Sunoco's direction goes to the heart of this case – *viz.*, does Sunoco in fact pay (or ensure payment of) the promised discount for each and every fuel purchase with a Sunoco Card.  Only Citibank's data will show whether this with respect to discounts that Sunoco claims it applies, with Citibank's help, as statement credit.  Further, the number and identities of cardholders is basic class certification discovery pertinent to numerosity, ascertainability, and notice.

Citibank has not, and cannot, carry its burden as the resisting party to explain why this tailored discovery should not be had.  Citibank certainly has not pointed to, let alone demonstrated,

any "clearly defined and serious injury" that it will suffer were this Court to order production of the requested data. At best, Citibank may have an inchoate concern about cardholder privacy, but the existing Protective Order already provides sufficient safeguards to address this. If necessary, it can be modified to address additional privacy concerns not addressed by the existing Protective Order.

### IV.     CONCLUSION

Citibank has had ample time – over four months – to investigate what data it possesses, and what would be involved in producing the data. It has failed to share any of that information with Plaintiff. Despite Plaintiff's courtesy of affording Citibank all reasonable accommodations, Citibank cannot indefinitely shirk its obligations to respond to a properly issued Rule 45 subpoena. The Court should overrule Citibank's objections and order Citibank to produce the requested data within 10 business days, without prejudice to Plaintiff's rights to seek the additional categories of documents set forth in the subpoena.

**Dated:  May 9, 2018**                            Respectfully submitted,

                                         */s/ DJS8892*
                                         Richard M. Golomb, Esquire
                                         Ruben Honik, Esquire
                                         Kenneth J. Grunfeld, Esquire
                                         David J. Stanoch, Esquire
                                         **GOLOMB & HONIK, P.C.**
                                         1515 Market Street, Suite 1100
                                         Philadelphia, PA 19102
                                         Phone:  (215) 985-9177
                                         Fax:    (215) 985-4169
                                         Email:  rgolomb@golombhonik.com
                                                 rhonik@golombhonik.com
                                                 kgrunfeld@golombhonik.com
                                                 dstanoch@golombhonik.com

                      *Attorneys for Plaintiff and the Putative Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of May 2018, a true and correct copy of the foregoing was served on all parties of record via operation of the Court's CM/ECF system, and further was served on the following via electronic mail:

Daniel JT McKenna, Esquire
**BALLARD SPAHR, LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103
McKennaD@ballardsphar.com

                                          */s/ DJS8892*
                                          David J. Stanoch